UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-14006-T/P-MOORE/LYNCH

UNITED STATES OF AMERICA,

   Plaintiff,

v.

DAVID HENRY SHERWOOD,

   Defendant.

_____/

FILED by _____ D.C.

MAY - 5 2008

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

## REPORT AND RECOMMENDATION ON PETITION FOR VIOLATION OF SUPERVISED RELEASE

**THIS CAUSE** having come on to be heard for a final evidentiary hearing on April 30, 2008, in regards to the pending Petition Alleging Violations of Supervised Release and this Court having received sworn testimony and evidence, makes the following findings and recommendations to the District Court:

  1. The Defendant is charged in a Petition dated March 13, 2008 with two violations of supervised release. Those violations are:

<table>
<tr><td><strong>Violation Number 1</strong></td><td><strong>Violation of Mandatory Condition</strong>, by failing to refrain from violation of the law. On March 1, 2008, in Indian River County, Florida, the defendant was arrested pursuant to an arrest warrant charging him with Aggravated Battery with a Deadly Weapon and Assault, in violation of Florida statutes 784.045(1)(A)(2) and 784.011 respectively. The alleged new criminal conduct occurred on February 20, 2008, and the victim was the offender's girlfriend, Ms. Linda Walker, who is a convicted felon as noted in violation number 2.</td></tr>
<tr><td><strong>Violation Number 2</strong></td><td><strong>Violation of Standard Condition</strong>, by associating with a person who is a convicted felon without permission of the U.S. Probation Officer. For the</td></tr>
</table>

> past sixteen (16) months, the defendant has knowingly associated with Linda Walker, white female, DOB October 5, 1979, FBI No. 291130JB7, convicted in United States District Court for the Southern District of Florida on December 6, 1999, in Docket No. 98-14048-CR-ROETTGER of Possession of Crack Cocaine, and sentenced to sixty months Probation.

2.    The Defendant announced through counsel that he wished to admit Violation Number 2 and then proceed to the evidentiary hearing only in respect to Violation Number 1. This Court accepted the Defendant's admission to Violation Number 2. This Court questioned the Defendant and is satisfied that he understands his rights in this regard. Further, this Court is satisfied that based upon the Defendant's responses to this Court's inquiries, that the Defendant admitted the allegations contained within Violation Number 2 of his own free will and accord since he did, in fact, violate his supervised release by associating with a convicted felon, Linda Walker.

3.    This Court explained to the Defendant that based upon his admission to Violation Number 2, that this is sufficient for the District Court to revoke his supervised release and sentence him to be incarcerated in the Federal Bureau of Prisons. The Defendant acknowledged this fact and stated that he understands this outcome regardless of the recommendation that this Court makes in respect to the remaining violation set forth in the Petition.

4.    This Court conducted a preliminary hearing on April 16, 2008. This Court issued an Order Finding Probable Cause dated April 17, 2008. At the outset of this evidentiary hearing, which will now concern itself only with the allegations set forth in

2

Violation Number 1 of the Petition, both counsel for the government and counsel for the Defendant agreed that this Court would not have to re-hear all of the testimony and receive the evidence which it already received at the preliminary hearing. Both counsel agreed that this Court could accept that evidence, together with additional testimony and evidence which this Court received at the final evidentiary hearing on April 30, 2008.

5.     This Court also notes that the Defendant wished to preserve his hearsay objections concerning the out of court statements of the alleged victim, Linda Walker. The Defendant argues that the statements are not only hearsay, but are violative of Rule 32.1 of the Federal Rules of Criminal Procedure, concerning a defendant's right to confront those witnesses. This Court advised the parties that it would overrule the Defendant's objections, receive all of the evidence in respect to this matter, and then once the parties had an opportunity at the conclusion of the hearing to make arguments with citations to case law concerning all issues, this Court will make a final determination in its Report and Recommendation concerning the admissibility of these hearsay statements.

6.     With all of this in mind, this Court will recite herein the evidence as taken directly from this Court's Order Finding Probable Cause which is dated April 17, 2008. At the conclusion of re-stating that testimony and evidence, this Court will immediately go into the additional evidence and testimony received at the evidentiary hearing on April 30, 2008.

7.     The government called Deputy Sheriff Riggs of the Indian River County Sheriff's Office. Deputy Riggs had contact with the Defendant when he responded in the early morning hours of February 20, 2008 to a claim of domestic violence. Deputy Riggs

met with the alleged victim, Linda Walker, who was actually found two houses down from the residence where the alleged incident took place. Linda Walker was visibly shaking, crying, and leaning against the house. She requested emergency medical services. Deputy Riggs called EMS and they responded. Deputy Riggs, in the meantime, tried to calm Ms. Walker down.

8.     Ms. Walker stated that the Defendant, who was her boyfriend, beat her up back at their residence. She stated that the Defendant attacked her based on an alleged complaint of sexual battery which was made the previous day.

9.     Apparently, Deputy Riggs had been called to the residence occupied by the Defendant and Ms. Walker the previous day, February 19, 2008, concerning an allegation that an unidentified individual had committed a sexual battery upon Ms. Walker. The Defendant was visibly upset when Deputy Riggs responded to that complaint on February 19, 2008. The victim was not there at the time. Deputy Riggs identified both the Defendant and Ms. Walker in court at this hearing.

10.    In regards to the incident on February 20, 2008, Ms. Walker stated that the Defendant grabbed her by the back of her neck and then quickly released her. They then went to bed. Later they both woke up and went into the kitchen to fix something to eat. While in the kitchen, Ms. Walker stated that the Defendant grabbed her by the neck again and hit her head with a metal folding chair. She then got to her feet and ran to the front door where the Defendant pushed her over some type of shelf. She once again fell to the floor. She regained her feet and ran into the bathroom, locked the door and then jumped out of the window.

4

11. Government's Exhibits 1 through 5 inclusive are photographs of the Defendant's alleged injuries to her neck, arm and back, together with a copy of the broken window in the bathroom where she purportedly exited the residence. Deputy Riggs identified the photographs and stated that the marks that he observed on Ms. Walker's body were consistent with some sort of confrontation with someone. Also, Ms. Walker told Deputy Riggs that she had pain on her head from where the Defendant purportedly hit her with a folding chair.

12. The next witness called by the government was United States Probation Officer Borges, who supervises the Defendant. Mr. Borges testified that both he and United States Probation Officer Smith had repeatedly instructed the Defendant that he was not to have any association with Linda Walker, who is a convicted felon. As the Petition indicates in Violation Number 2, Linda Walker was convicted in this Court in 1999 for the charge of possession of crack cocaine. She was sentenced to a period of sixty months probation.

13. Mr. Borges testified that on several occasions the Defendant was told to not associate with any felons and, in particular, Linda Walker. Apparently Walker and the Defendant met each other at a halfway house while completing their sentences. As a result of that meeting, they began a relationship and continued to do so even after the Defendant was specifically instructed by the U. S. Probation Officer to not have any contact with Linda Walker.

14. Mr. Borges testified that the Defendant went further after being instructed to not have any contact with Linda Walker, and entered into a lease to rent a property where they would both live together in Jensen Beach, Florida.

15.     After his arrest concerning the alleged aggravated battery which serves as the substance for Violation Number 1 in the pending Petition, the Defendant informed Mr. Borges that he had been arrested two days prior. He told Mr. Borges the particular charges as well.

16.     Mr. Borges also testified that he has seen the Defendant and Ms. Walker together on several occasions even though the Defendant had been specifically instructed to not only stay away from any convicted felons, but to stay away from Linda Walker in particular. Further, Ms. Walker's mother and another individual told Mr. Borges that they were present when the Defendant threatened to harm Ms. Walker as well as other individuals who were present.

17.     Mr. Borges also testified that it was his understanding that shortly after the Defendant's arrest, that Ms. Walker went to the State Attorney's Office on numerous occasions and requested that the charges be dropped.

18.     On cross-examination, Mr. Borges verified that the Defendant has been on supervised release since October 6, 2006. He is self-employed, but has never provided any proof of income.

19.     All of the above testimony was received by this Court on April 16, 2008 during the preliminary hearing and will be considered as having been introduced at this final evidentiary hearing. The first witness called by the government at the final evidentiary hearing on April 30, 2008, which supplements the above evidence, was Rose Marie Wilson. Ms. Wilson testified that she is a neighbor of the Defendant and Linda Walker. She testified that on or about the date in question, March 1, 2008, Linda Walker appeared on Ms. Wilson's doorstep visibly shaking and bleeding. Ms. Wilson testified that it was

6

obvious that Linda Walker had also defecated and urinated in her clothing. Linda Walker told Ms. Wilson that she had been raped in a wooded area the day before, went home, and that the Defendant "beat her up." Linda Walker also told Ms. Wilson that she crawled through the broken bathroom window and ended up at Ms. Wilson's house. Ms. Wilson testified that she does not really know Ms. Walker, but has seen she and the Defendant in the neighborhood. She knows the Defendant to be the boyfriend of Ms. Walker and the person who Ms. Walker was referring to when she said that she had been beaten up by her boyfriend.

20.     Sergeant Pierce of the Indian River County Sheriff's Office was the next witness called by the government. He assisted Deputy Riggs with the investigation in this case. He interviewed the victim some twenty minutes after the call was made for assistance. He testified that when he met with Linda Walker, she was nervous, scared, and wanted to get away from the residence. A DVD recording of this interview taken at the front of an Indian River County Sheriff's Office patrol car was admitted into evidence as Government's Exhibit 6. The parties agreed that this Court could review the DVD after the conclusion of the evidentiary hearing. This Court has reviewed the DVD, Government's Exhibit 6, in its entirety.

21.     On cross-examination, Sergeant Pierce testified that he was not involved in the rape investigation which apparently was assigned to another officer and had been started the previous day. He did not look at the bathroom window closely nor did he know how Linda Walker got out of that window. He did testify that Linda Walker told him she had sustained injuries coming through the window to exit the home.

7

22.    Sergeant Pierce also testified that there was a separate investigation concerning this Defendant and Linda Walker as suspects in stealing DVDs or some other merchandise from a local K-Mart. This is seen on Government's Exhibit 6 at the conclusion of the interview of Linda Walker by Sergeant Pierce. Linda Walker is seen in the exhibit denying any involvement in that episode.

23.    Sergeant Pierce testified that Linda Walker was taken to Safespace that evening. He asked Linda Walker to return with him to the residence to get her belongings but Linda Walker refused. Linda Walker purportedly later denied everything that she had told the officers concerning the Defendant being responsible for her injuries.

24.    Deputy Riggs was re-called as a witness by the government. He testified that upon arriving on the scene and finding Linda Walker at the neighbor's home, that Linda Walker said the Defendant hit her with a metal folding chair. When Deputy Riggs responded to the Defendant's residence, the Defendant was gone. Deputy Riggs found a metal folding chair in the home and, in fact, sat on it to complete his report. On cross-examination, Deputy Riggs stated that he is not aware of any injuries that Linda Walker sustained or may have sustained during the purported rape the day before. She never told anyone that she was hit on the head during the alleged rape. Deputy Riggs did observe the broken window that Linda Walker said she had gone through to escape from the home.

25.    The Defendant presented no witnesses or evidence at the evidentiary hearing.

8

## ANALYSIS

26.    The standard of proof in respect to evidentiary hearings involving possible revocation of supervised release is governed by Title 18, United States Code, Section 3583(e)(3). This statute provides that after considering other statutory factors as set forth in § 3553, that the Court may revoke a term of supervised release if the Court finds by a preponderance of the evidence that the Defendant violated a condition of supervised release.  This standard of proof was reiterated by the United States Supreme Court in Johnson v. United States, 529 U.S. 694 (2000), wherein the court stated that violations of supervised release, though they may lead to reimprisonment, need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt. Accordingly, this Court will review the evidence in this case under a preponderance of the evidence standard in determining whether or not the Defendant violated his supervised release based upon the conduct alleged in Violation Number 1.  This Court needs not address Violation Number 2 since the Defendant has admitted that violation on the record.

27.    The key issues in this instance are the hearsay statements of the alleged victim, Linda Walker. She was not called to testify in this case and the government offered no explanation as to why she was not called as a witness.  As a result, this Court must conduct an analysis to determine whether or not her out of court hearsay statements are admissible in this proceeding.  There are at least three sets of out of court statements that Linda Walker made.  The first statements were made to the neighbor, Ms. Wilson.  A second set of statements were made to Deputy Riggs who was the first law enforcement

9

officer to respond to the scene. The final statements made by Linda Walker were to Sergeant Pierce and are memorialized in the DVD, Government's Exhibit 6.

28.    Counsel for the Defendant argues that admission of these hearsay statements to prove their truth is not only a violation of the Federal Rules of Evidence, but is also a violation of Federal Rules of Criminal Procedure, Rule 32.1, and the Defendant's right to confront accusers. In support of this position, the Defendant cites United States v. Frazier, 26 F.3d 110 (11th Cir. 1994). Frazier directs that a district court in such a supervised release revocation hearing, is required to balance the defendant's right to confront adverse witnesses against grounds asserted by the government for denying such confrontation. Frazier also directs that the district court must also make a determination as to whether the hearsay statement is reliable. The Eleventh Circuit in Frazier reiterated the well known tenet of law which holds that the Federal Rules of Evidence do not apply in supervised release revocation proceedings. Further, Frazier holds that admission of hearsay testimony is permitted, but only after the appropriate balancing test is conducted. The Defendant is entitled to certain minimal due process requirements in revocation of supervised release proceedings including the right to confront and cross examine adverse witnesses.

29.    While this Court overruled the hearsay objections made by defense counsel at the preliminary hearing, the Defendant now makes a more specific objection and cites to specific criminal rules of procedure and case law. Therefore, this Court's prior ruling in respect to the preliminary hearing is not dispositive of this issue and this Court must conduct the appropriate balancing test and review under all applicable case law.

10

30. There is nothing in the Frazier decision which would indicate that there are any greater or lesser rights involved in revocation of supervised release hearings in respect to the Defendant's right to confront witnesses. In other words, there is no more stringent standard under Rule 32.1 than there would be in a normal adversary criminal proceeding. Therefore, this Court will look to other case law concerning the Confrontation Clause, its interpretation, and any hearsay exceptions which courts have utilized in a factual setting such as is before the Court in this instance. By doing so, this Court believes that it is conducting the balancing test which is required under Frazier.

31. The United States Supreme Court in Davis v. Washington, 547 U.S. 813 (2006) held that statements taken by police officers in the course of an interrogation are "nontestimonial" and not subject to the Confrontation Clause when they are made under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. Further, Davis holds that statements taken by police officers are "testimonial" and subject to the Confrontation Clause when the circumstances objectively indicate that there is no ongoing emergency and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

32. In the Davis case, the Court found that statements made by a domestic abuse victim in response to a 911 operator's questions while the defendant was allegedly inside the victim's home were "nontestimonial" and were not subject to the Confrontation Clause. The Court's reasoning was that the victim was speaking about events as they were actually happening, rather than describing past events and that the primary purpose of the 911 operator's interrogation was to enable police assistance to meet an ongoing

11

emergency caused by physical threat to the victim.  Further, this same domestic battery victim's written statement in an affidavit given to police in Davis, who responded to the scene, was found to be "testimonial" and subject to the Confrontation Clause since there was no emergency in progress when the statement was given.  The alleged battery had happened before the police arrived and the primary purpose of the officer's interrogation was to investigate a possible past crime.  The facts set forth in the Supreme Court's opinion in Davis indicate that the officers responded within four minutes of the 911 call. The officers observed fresh injuries on the forearm and face of the victim and she was in a frantic effort to gather her belongings and children so she could leave the residence.  The victim did not testify at the trial and her hearsay statement to the 911 operator was admitted over objection.  The Supreme Court found that the statement made to the 911 operator was nontestimonial and admissible.  Further, the Court held that any subsequent statements made, since there was no ongoing emergency, were testimonial and should have been excluded.

33.    The Eleventh Circuit in United States v. Billingslea, 204 Fed.Appx. 856 (11th Cir. 2006) addressed the same issues concerning the Confrontation Clause.  The Eleventh Circuit referenced the Supreme Court's opinion in Davis.  The Eleventh Circuit in Billingslea held that in following Davis, statements are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to a later criminal prosecution.  The Eleventh Circuit cites as an example, a witness's statement to a police officer describing a domestic disturbance that had already ended were "testimonial" and therefore subject to the Confrontation Clause.

12

34.     Based upon the established case law, this Court finds that the statements made by Linda Walker to Deputy Riggs and Sergeant Pierce were testimonial in nature. The alleged criminal conduct by the Defendant against Linda Walker had ended before Deputy Riggs even arrived at the scene.  Any statements taken by Deputy Riggs and Sergeant Pierce were clearly taken to establish or prove these past events which may potentially be relevant to a later criminal prosecution of the Defendant concerning that alleged criminal activity that took place within the residence.  There was no ongoing emergency in spite of the fact that Linda Walker may have been upset or scared.  At the time that Deputy Riggs met with Linda Walker, she was at Ms. Wilson's residence, a couple of houses away from where this criminal conduct purportedly took place.  In fact, the evidence submitted to this Court was that the Defendant was no longer at the residence where this took place.

35.     In reviewing the DVD, Government's Exhibit 6, Linda Walker was observed to certainly be upset.  However, she is not distraught, shaking or screaming as she purportedly was when she arrived at Ms. Wilson's residence.  It is clear to this Court that the interrogation by Sergeant Pierce as depicted in Government's Exhibit 6, was well away from the residence, subsequent to the criminal conduct and was not part of any ongoing emergency.

36.     The government submits as an alternative theory that the statements made by Linda Walker are exceptions to the hearsay rule as excited utterances.  In United States v. Carlisle, 173 Fed.Appx. 796 (11th Cir. 2006), the Eleventh Circuit stated the law in regards to what is considered to be an "excited utterance exception" to the hearsay rule. To be admissible as an excited utterance, the out of court statement must be related to the

13

startling event and must be made while under the stress or excitement caused by the event. The Court found that an "out of court statement" made at least fifteen minutes after the event it describes is not admissible unless the declarant was still in a state of excitement resulting from the event.

37.    In using Carlisle in conjunction with the facts in this case, there is no indication that Linda Walker was in such an excited state when she met with Deputy Riggs. Certainly, this Court has viewed the demeanor of Linda Walker on Government's Exhibit 6 which is the interrogation by Sergeant Pierce and finds absolutely no evidence that would support a finding that Linda Walker was "under stress or excitement resulting from the event." This Court has taken into consideration the testimony of Deputy Riggs wherein he testified that Linda Walker was visibly shaking, crying, and leaning against Ms. Wilson's house when he first responded. However, the statements made by her concerning the Defendant's conduct are not anything which this Court could envision as "excited utterances" as one would scream out or yell out closer in time to an actual event.

38.    One needs only to look at the factual basis of the Carlisle opinion which permitted the "excited utterance" of the shooting victim to a paramedic responding within a few minutes to the scene of the shooting. The Court found that "it stands to reason that being shot by one's spouse would create significant distress that might linger longer than just a few minutes." The Court found that the victim in the Carlisle case, in speaking with the paramedic and the responding law enforcement officers while she was being treated for the gunshot wound, remained in a state of distress caused by the shooting and that her statements about who had shot her were related to that event. This Court cannot make

14

the same finding in regards to the statements made by Linda Walker to Deputy Riggs nor the statements made to Sergeant Pierce.

39.     The Court now looks to the statements that were made by Linda Walker to Ms. Wilson, the neighbor two houses away. These statements were purportedly made immediately after Linda Walker broke through a window and escaped the residence after the Defendant purportedly had "beaten her up." Ms. Wilson testified that Linda Walker was shaking, bleeding and had obviously defecated and urinated in her clothes. This Court likens such statements by Linda Walker to Ms. Wilson as statements to a 911 operator referenced in several of the court opinions reviewed by this Court herein. This Court finds that the statements made to Ms. Wilson were not in the nature of any interrogation by a law enforcement officer and do satisfy the definition of it being an excited utterance exception to the hearsay rule as announced by the Eleventh Circuit in Carlisle.

40.     In respect to whether or not the statements to Ms. Wilson are violative of the Confrontation Clause, this Court need only look at the Supreme Court's opinion in Davis and the Eleventh Circuit's opinion in Billingslea to find that the statements are nontestimonial in nature. The statements to Ms. Wilson were made under circumstances where the alleged victim, Linda Walker, was speaking about events as they were actually happening rather than describing past events. As stated by this Court previously, this Court likened them to a call to a 911 operator wherein the 911 operator interrogates the caller to enable police assistance to meet an ongoing emergency.

41.     The statements to Ms. Wilson were made during what this Court believes was an ongoing emergency, to wit Linda Walker having just "escaped" through a broken window where she alleged that the Defendant "beat her up." The statements to Ms. Wilson

15

were not in the nature of an interrogation to establish or prove past events potentially relevant to any later criminal prosecution. They were clearly excited utterances made to Ms. Wilson without any real inquiry on the part of Ms. Wilson so that law enforcement could be called to the scene.

42.     Since this Court finds that the case law not only supports a finding that the statements to Ms. Wilson do not violate the Confrontation Clause nor the hearsay rule, they are not excludable under the analysis suggested by the Eleventh Circuit in Frazier. Further, this Court makes a specific finding that because these statements were made so close in time after Linda Walker purportedly "escaped" from the Defendant, that they are reliable. There is no indication that Ms. Walker had defecated on herself, urinated on herself and portrayed herself in an emotional state simply to "make up" these facts against the Defendant. This lends credibility to the statements made by Linda Walker to Ms. Wilson.

43.     This Court is not unmindful of the evidence that Linda Walker later attempted to recant all of these facts afterwards in an attempt to have the charges dismissed against the Defendant. Ms. Walker would not be the first victim of a domestic battery to make such a request. Her later conduct does not affect this Court's finding that the statements made to Ms. Wilson at a time which was almost contemporaneous with the alleged criminal conduct of the Defendant are more reliable.

44.     As a result of the foregoing, this Court is left with the statements by Linda Walker to Ms. Wilson that the Defendant "beat her up." During Ms. Wilson's testimony, there was no mention that Linda Walker told Ms. Wilson that the Defendant had beat her with a chair or any other deadly weapon. This Court previously found in its Order Finding

16

Probable Cause at the conclusion of the preliminary hearing, that a chair can be considered a deadly weapon under Florida case law. In respect thereto, this Court cited to Judge Ryskamp's opinion in McCormick v. City of Fort Lauderdale, 333 F.3d 1234 (11th Cir. 2003). However, since this Court finds that the hearsay statements of Linda Walker to Deputy Riggs and Sergeant Pierce should be excluded as hearsay and also excludable under Frazier, this Court is left solely with the statements made by Linda Walker to Ms. Wilson. Those statements do not include any mention of a deadly weapon. Ms. Wilson testified only that Linda Walker said the Defendant "beat her up." This cannot be considered aggravated battery since the cuts and scrapes and any other visible injuries that the record shows were inflicted upon Linda Walker are not considered by this Court to be great bodily harm, permanent disability or permanent disfigurement. This Court has no evidence to support such a finding.

45.    Under Florida Statute 784.045, Aggravated Battery is defined as "a person commits aggravated battery who, in committing battery: (1) intentionally or knowingly causes great bodily harm, permanent disability or permanent disfigurement; or (2) uses a deadly weapon."

46.    Since there is no testimony from Ms. Wilson concerning a deadly weapon and there is no evidence of great bodily harm, permanent disability or permanent disfigurement, this Court cannot find that an aggravated battery has been proven. However, this Court agrees with the government's assertion that battery is a lesser included offense of the crime of aggravated battery. This Court notes the Defendant's objection to this and the Defendant's argument that "battery" is not specifically listed within the substantive allegations in Violation Number 1. Nevertheless, this Court finds that any

17

attorney licensed to practice in the State of Florida and who practices criminal law in the State of Florida is well aware of the fact that battery is a lesser included offense to the greater crime of aggravated battery. In fact, in reading the statutory definition of aggravated battery found in Florida Statute 784.045, one finds that the definition specifically states that "a person commits aggravated battery who, *in committing battery*...(emphasis added). In being put on notice of the charge of aggravated battery, the Defendant is necessarily put on notice as to the existence of the lesser included crime of battery by merely reading the definition of aggravated battery.

47.      The District Court is permitted to revoke a defendant's supervised release upon the proof of the commission of any criminal conduct violating a defendant's conditions of supervised release. This Court finds it hard to believe that merely because a particular element of a greater crime is not able to be proven, that the Court must ignore proof of criminal conduct which establishes a lesser included offense.

48.      Next, this Court must look to what is considered a battery under Florida law. Under Florida law, the statutory elements of simple battery are "an actual and intentional touching or striking of another person against the will of the other person, or intentionally causing bodily harm to an individual." Sosa-Martinez v. U. S. Attorney General, 420 F.3d 1338 (11th Cir. 2005). This Court finds that there is more than sufficient evidence to establish a simple battery based upon the statements made by Linda Walker to Ms. Wilson and the contemporaneous observations that Ms. Wilson made of the victim at the time that those statements were made. Linda Walker stated the Defendant "beat her up" and Ms. Wilson observed visible cuts and other abrasions on Linda Walker's body. This Court

18

wishes to make it clear that it is not even necessary to have a visible bruise, cut or abrasion to satisfy the law as to a simple battery. There is no such requirement under the statutory definition found in Florida Statute 784.03 as referenced in the Sosa-Martinez opinion nor in the case law interpreting what is a simple battery in the State of Florida. An unintentional touching leaving absolutely no bruises, cuts or visible injuries would still constitute a battery. Therefore, Linda Walker's statements to Ms. Wilson that the Defendant "beat her up" taken in conjunction with the state in which Ms. Wilson observed Linda Walker, is sufficient for this Court to find by a preponderance of the evidence that the Defendant committed a battery on Ms. Walker. Further, this Court finds that the Defendant was put on notice that the battery is a lesser included offense to the aggravated battery specifically mentioned in Violation Number 1.

49.     Additionally, as to the allegations in Violation Number 1 of the Petition alleging assault under Florida Statute 784.011, that statute defines an assault as "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." See also Colony Insurance Company v. Barnes, 410 F.Supp. 2d 1137 (N.D. Fla. 2005). An assault in the State of Florida does not require any touching or injury. A simple threat to do violence, coupled with an apparent ability to do so, creating in the mind of the alleged victim a fear of such impending peril is sufficient. This Court finds that under the circumstances as observed and heard by Ms. Wilson, that an assault had been established by the Defendant against Linda Walker. The statements by Linda Walker that the Defendant "beat her up" establish that there was some confrontation between she and the Defendant in their residence which resulted in

19

what this Court finds to be a battery. Based upon what she told Ms. Wilson, Linda Walker said that the Defendant had beaten her up and necessarily was attempting to escape the Defendant's continued "offer of corporal injury" when she escaped through the broken window in the home. Under the facts and circumstances presented in this case and this Court viewing the totality of the evidence as a whole, the government has established that Linda Walker was assaulted, as defined by Florida law, and battered as referenced by this Court above.

50.     Based upon all of the foregoing, even though this Court finds that the statements of Linda Walker to Deputy Riggs and Sergeant Pierce should be excluded and not considered, there is sufficient evidence from the testimony of Ms. Wilson to establish that the Defendant committed criminal conduct in violation of his conditions of supervised release as set forth in Violation Number 1 in the Petition.

**ACCORDINGLY,** this Court recommends to the District Court that the Defendant be found to have violated his supervised release in respect to Violation Number 1 based upon the evidence received by this Court and analysis conducted in respect thereto, and has violated his conditions of supervised release in respect to the allegations in Violation Number 2 based upon his admission to that conduct.

The parties shall have ten (10) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable K. Michael Moore, United States District Judge assigned to this case.

**DONE AND SUBMITTED** this _5th_ day of May, 2008, at Fort Pierce, Northern Division of the Southern District of Florida.

FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

Copies furnished:
Hon. K. Michael Moore
AUSA Carlos Wells
AFPD Jonathan Pinoli
U. S. Probation

21